```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                 AT CHARLESTON
```

**KANAWHA INSTITUTE FOR
SOCIAL RESEARCH & ACTION,
INC.**

      Plaintiff,

v.                                         Civil Action No. 2:17-CV-1963

**GREEN SPIRIT FARMS, LLC,**

      Defendant.


### MEMORANDUM OPINION AND ORDER


Pending is the plaintiff's motion for summary judgment, filed October 8, 2018.

### I. Background

In December 2014, the plaintiff, Kanawha Institute for Social Research and Action ("KISRA") and defendant, Green Spirit Farms, LLC ("GSF"), entered into a contract to develop a Vertical Farm using a Vertical Growing System at a KISRA facility in Charleston, West Virginia. Compl. ¶ 14. Plaintiff now brings an action for damages resulting from an alleged breach of this contract and conversion of KISRA's funds.

KISRA is a faith-based organization which works to strengthen families through a community health center, health

support services, and a variety of programs in connection with employment, financial counseling, and child education. Pl.'s Mot. Summ. J. at Ex. 1 ¶ 3. In 2014, KISRA's Chief Executive Officer was Michelle Foster ("Foster"). Id. ¶ 2. GSF is a for-profit limited liability company organized under the laws of Illinois. Compl. ¶ 2; Def.'s Ans. and Aff. Defenses. ¶ 2. GSF is a "manager-managed" company under the Illinois Limited Liability Act, and from January 1, 2014 until July 15, 2017, Milan Kluko ("Kluko") was the Manager of GSF. Ans. to Pl.'s 1st Interrog. 3, 5.

In 2014, Foster became aware of GSF's Vertical Growing System ("VGS"). Pl.'s Mot. Summ. J. at Ex. 1 ¶ 6. The VGS is an indoor, hydroponic system where produce is grown in vertical racks under lights. Id. ¶ 6. In early October 2014, Foster toured a GSF facility in Michigan. Id. ¶ 7. After discussions between Foster, Kluko, and other representatives of KISRA and GSF, KISRA and GSF orally agreed to develop a vertical farm using GSF's VGS in a building owned by KISRA in Charleston, West Virginia. Id. ¶ 7.

On or around December 19, 2014, KISRA received a Purchase Order from GSF ("P.O. No. 5504 Kisra") requesting that KISRA pay 50% of the total cost of lighting for the VGS -

$130,680. Id. ¶ 9; Id. at Ex. A. On December 19, 2014, KISRA paid GSF the $130,680.00. Id. ¶ 10; Id. at Ex. A.

On December 22, 2014, Kluko emailed a "revised scope of work agreement" to Foster regarding the development of the VGS. Id. ¶¶ 11-12; Id. at Ex. B. Foster acknowledged receipt of the "revised scope of work agreement" by email and stated that she would sign the agreement by the next day. Id. ¶¶ 11-12; Id. at Ex. B. The "revised scope of work agreement" was in the form of a Memorandum from Kluko and another GSF representative to Foster, dated December 22, 2014, titled: "Scope, Schedule and Budget for 1039 Central Avenue Charleston, WV – the 'Central Avenue Vertical Farm' Project" ("VGS Memorandum Agreement"). Id. ¶¶ 11-12; Id. at Ex. B. Foster executed the VGS Memorandum Agreement and returned the signed form to Kluko. Id. ¶ 13.

The VGS Memorandum Agreement provided that "[b]ased on our most recent discussions last week including our visit to KISRA as well as inspection of the Central Avenue structure in Charleston, WV, Green Spirit Farms (GSF) and KISRA have agreed to develop an initial Vertical Farm using our Vertical Growing Systems." The VGS Memorandum Agreement noted that "KISRA has provided an initial payment of $130,680.00 representing 50% of the cost of the lighting for the []VGS units." Finally, the VGS

Memorandum Agreement stated "[i]f you agree with this Scope of Services and budget please sign where indicated and this will serve as our agreement between KISA [sic] and GSF." Id. ¶ 12; Id. at Ex. C.

Throughout 2015, KISRA made efforts to prepare the Charleston building for the installation of the VGS. Id. ¶ 14. As of January 2016, no lighting for the VGS units had been delivered to KISRA despite the payment by KISRA for lighting in December 2014. Id. ¶ 14. On January 5, 2016, Foster emailed Kluko and stated: "We would like to get a check out to you for the balance of the lights. Since our system is smaller than originally planned, I figure the balance will be less than the original invoice. Please provide an invoice for the balance." Id. ¶¶ 15-16; Id. at Ex. D. Foster's January 5th email to Kluko was followed by a series of emails between Foster and Kluko regarding the cost of the remaining lighting. Id. ¶¶ 15, 17; Id. at Ex. D. Finally, on January 13, 2016, Kluko informed Foster that the remaining cost of lighting was $92,150.00. Id. ¶ 17; Id. at Ex. D.

On January 14, 2016, GSF issued a Purchase Order to KISRA in the amount of $92,150.00 for the remaining VGS lighting. Id. ¶ 18; Id. at Ex. E. On January 21, 2016, KISRA furnished $92,150.00 to GSF. Id. ¶ 19; Id. at Ex. E. Despite

4

having paid GSF a total of $222,830.00, KISRA has never received any VGS lighting from GSF. Id. ¶ 19; Pl.'s Mot. Summ. J. at Ex. 5 ¶ 4.

Foster resigned as the Chief Executive Officer of KISRA effective February 5, 2016. Pl.'s Mot. Summ. J at Ex. 1 ¶ 20. After the final payment of $92,150.00 for the lighting on January 14, 2016, KISRA asked GSF several times when KISRA would receive the lighting, but KISRA never received an explanation for GSF's failure to deliver it. See Pl.'s Mot. Summ. J. at Ex. 6 ¶ 4.

On February 19, 2016, KISRA's Chief Operating Officer, Carl Chadband ("Chadband"), emailed Kluko informing him that KISRA was cancelling the VGS project and that it requested a return of the $222,830.00. Pl.'s Mot. Summ. J. at Ex. 6 ¶¶ 4-6; Pl.'s Mot. Summ. J., Ex. 1 at Ex. A. On February 22, 2016, Kluko responded to Chadband's February 19th email by stating, inter alia, that GSF "cancelled work orders for your lighting and will refund the cost of the lighting," and that it "[s]hould have this accomplished in approximately 2 weeks from today." Id. at Ex. 6 ¶ 7; Id. at Ex. A. However, GSF did not return the refund as promised.

Consequently, on March 11, 2016, Chadband emailed Kluko and stated: "Can you provide me with a status update for

our refund. It has been two weeks. Thanks!" Id. at Ex. 6 ¶ 8; Id. at Ex. A. Kluko responded to Chadband the same day and stated: "We hope to have this wrapped next week the process has taken a little longer than we had hoped and my apologies . . . we have all the items together and RMA to get the funds[.] I will get back with you COB Tuesday." Id. at Ex. 6 ¶ 9; Id. at Ex. A. Nonetheless, KISRA has yet to receive the lighting or any of the $222,830 refund. Id. at Ex. 6 ¶ 10; Pl.'s Mot. Summ. J. at Ex. 5 ¶ 4.

The plaintiff filed its two-count complaint on March 31, 2017,[1] alleging breach of contract and conversion, to which the defendant filed its answer on June 21, 2017. The case was stayed on March 20, 2018. On June 27, 2018, the court granted the defendant's motion for leave to withdraw as counsel and lifted stay of the case. Therein, the court directed the defendant to promptly obtain counsel if it wished to proceed with representation; however, the defendant remains unrepresented. After two extensions of time, the plaintiff filed its motion for summary judgment on October 8, 2018, to which no response has been filed.

---

[1] This case invokes the court's diversity of citizenship jurisdiction.

## II. Legal Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing - "that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in

favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

III. Discussion

A. Count I

The plaintiff contends that defendant breached the parties' contract for development of the VGS by failing to deliver the lighting for the system. It claims damages in the amount of $222,830 with interest as a result of GSF's alleged breach and subsequent failure to refund the monies KISRA furnished for the lighting. To prevail on a claim for breach of contract under West Virginia law, the plaintiff must prove three elements: (1) formation of a contract; (2) breach of the terms of the contract; and (3) damages as a result of the breach. Sneberger v. Morrision, 776 S.E.2d 156, 171 (W. Va. 2015).

Plaintiff and defendant entered into a written contract - the VGS Memorandum Agreement - in which GSF agreed to develop and install a VSG at KISRA's facility by obtaining and installing lighting, and KISRA agreed to pay GSF $222,830 for those goods and services. KISRA paid the entire balance due while GSF failed to deliver the lighting, yet kept KISRA's funds. Therefore, GSF breached the agreement by not performing the services contracted for, and KISRA has been damaged in the amount of $222,830 as a result.

Whereas here, the parties are not shown to have agreed to an applicable interest rate, the award of prejudgment interest in a diversity case is governed by state law. Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 633 (4th Cir. 1999). Section 56-6-31 of the West Virginia Code is the applicable statute for determining the amount of prejudgment interest to which the plaintiff is entitled. Secure US, Inc. v. Security Alarm Financing Enterprises, Inc., 2010 WL 4641624, at *1, *19 (S.D. W. Va. 2010). Subsection (b)(1) provides, in part:

> [P]rejudgment interest is two percentage points above the Fifth Federal Reserve District secondary discount rate in effect on January 2, of the year in which the right to bring the action has accrued, as determined by the court and that established rate shall remain constant from that date until the date of the judgment or decree, notwithstanding changes in the federal reserve district discount rate in effect in subsequent years prior to the date of the judgment or decree: Provided, That the rate of the prejudgment interest may not exceed nine percent per annum or be less than four percent per annum.

W. Va. Code § 56-6-31 (emphasis in original). KISRA canceled the contract by email notification and sought return of the monies paid, on February 19, 2016. Inasmuch as the defendant promised on February 22, 2016, that it would furnish the funds within two weeks, the refund was due on or before March 7, 2016.

Accordingly, interest shall run from March 7, 2016 at the legal rate. This equates to two percentage points above the

secondary discount rate in effect for the Fifth District Federal Reserve Bank on June 2, 2016, which was 1.75%. Added to this 1.75% rate are the two percentage points specified in subsection (b)(1), which aggregates to an applicable rate of 3.75%. Subsection (b)(1) further specifies, however, that the rate of prejudgment interest shall not be less than 4% per year per year. The court thus uses the minimum rate of 4% for the entire period from March 7, 2016 to the date of the judgment. Using the damage award of $222,830, the prejudgment interest amount is $25,253.99 to this date. The plaintiff, accordingly, is entitled to damages in the total sum of $248,083.99.

B. Count II

The plaintiff claims defendant unlawfully converted $222,830 at KISRA's expense. Inasmuch as plaintiff is plainly entitled to recover this same sum under its Count I breach of contract claim, the court does not further address Count II.

### III. Conclusion

For the reasons discussed herein, it is ORDERED that the plaintiff's motion for summary judgment be, and it hereby is, granted as set forth above. It is further ORDERED that Kanawha Institute for Social Research & Action be, and it hereby

is, awarded damages, including prejudgment interest, in the total sum of $248,083.99.

The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.

Dated: January 7, 2019

John T. Copenhaver, Jr.
Senior United States District Judge